UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THOMAS TRAN ex rel. ESTATE OF TUYET THI LE, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-2119 (RBW) |
| ANTHONY CARR, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

The plaintiff, Thomas Tran, the personal representative of the estate of Tuyet Thi Le ("Ms. Le"), filed this action in the Superior Court of the District of Columbia ("Superior Court") against Anthony Carr ("Mr. Carr"), the Insurance Company of the State of Pennsylvania (the "Pa. Insurance Co."), and the American International Group (the "AI Group"), seeking damages and insurance policy benefits arising from an automobile accident that occurred in November 2007. See generally Notice of Removal (Plaintiff's Complaint for Negligence and Declaratory Judgment ("Compl.")). The case was removed to this Court, id., and thereafter the plaintiff stipulated to the dismissal of Mr. Carr. Docket Entry Number 20 (Stipulation of Partial Dismissal). Currently before the Court are the plaintiff's motion for partial summary judgment, and the Pa. Insurance Co.'s and the AI Group's (collectively, the "defendants") cross-motion for summary judgment.[1] After considering the parties' written submissions and the record before it,

---

[1] The Court also considered the following papers in resolving the parties' motions: (1) Plaintiff Thomas Tran's Memorandum of Law in Support of His Motion for Partial Summary Judgment ("Pl.'s Mem.") (this Memorandum contains a statement of undisputed facts); (2) Plaintiff Thomas Tran's Memorandum of Law in Support of Opposition to Defendants' Insurance Company of the State of Pennsylvania and American International Group Inc.'s Motion for Summary Judgment ("Pl.'s Opp'n"); (3) Plaintiff Thomas Tran's Reply to Defendants Insurance Company of the State of Pennsylvania and American International Group, Inc.'s Opposition to Plaintiff's Motion for
(continued…)

for the reasons set forth below the Court must deny the plaintiff's motion and grant summary judgment to the defendants.

## I. BACKGROUND

The facts giving rise to this lawsuit are not in dispute. On November 15, 2007, an automobile driven by Mr. Carr struck and killed Ms. Le as she was crossing the street as a pedestrian at the intersection of Connecticut Avenue and Ellicot Street in the District of Columbia. Pl.'s Mem. at 1-2. Mr. Carr had automobile insurance with another insurance company, and that company eventually paid the plaintiff the full policy limit of $25,000. Id. at 3.

At the time of the accident, Ms. Le was living with her daughter, Khanh Mai Do ("Ms. Do"), who was employed as the deputy defense attaché at the Embassy of Vietnam (the "Embassy"). Id. at 2. The defendants provided automobile insurance to the Embassy. Defs.' Stmt. ¶ 1. See generally Defs.' Mem., Exhibit ("Ex.") A (Certificate of Liability Insurance) (the "Policy").[2] The Policy covered two automobiles, a 2003 Mercury Grand Marquis and a 2006 Toyota Sienna, Defs.' Stmt. ¶ 1, which Ms. Do had access to as part of her employment, Pl.'s Mem. at 2. Significantly, neither car was involved in the accident. Defs.' Stmt. ¶ 7; Notice of Removal (Compl. ¶ 7).

---

(. . . continued)
Summary Judgment ("Pl.'s Reply"); (4) Statement of Material Facts Not in Dispute in Support of Defendants' Insurance Company of the State of Pennsylvania and American International Group, Inc.'s Motion for Summary Judgment ("Defs.' Stmt."); (5) Memorandum of Points and Authority in Support of Defendants' Insurance Company of the State of Pennsylvania and American International Group, Inc.'s Motion for Summary Judg[]ment ("Defs.' Mem."); and (6) Memorandum of Points and Authority in Support of Defendants' Insurance Company of the State of Pennsylvania and American International Group, Inc.'s Opposition to Plaintiff's Motion for Summary Judg[]ment ("Defs.' Opp'n"). The defendant has not numbered the pages of his briefs, see Defs.' Mem.; Defs.' Opp'n, and the Court will therefore cite to these documents as if the pages were numbered in sequential order.

[2] Both parties have submitted copies of the Policy as attachments to their filings. See Defs.' Mem., Ex. A; Pl.'s Mem., Ex. 1. Neither party, however, has numbered the pages of the Policy. The Court notes that the Policy is sixteen pages long, and when citing to the Policy in this Memorandum Opinion the Court will refer to the pages as if they had been numbered in sequential order.

In relevant part, the Policy provides for $100,000 in uninsured motorist benefits. Defs.' Mem., Ex. A, at 1. According to the Policy,

> The [Pa. Insurance Co.] will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury or property damage sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such uninsured automobiles.[3]

Id. at 13. The term "insured" is not defined in the uninsured motorist provision, see id. however, it is defined elsewhere in the Policy, in part, as "the named insured and resident relatives legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply." Id. at 7.

On the page of the Policy entitled "Certificate of Liability Insurance," the entity listed as the "insured" is the "Embassy of Vietnam Defense Office." Id. at 1. Several pages later, on the renewal declarations page for the "Diplomat Auto Program," the "Named Insured" is designated as the "Vietnam Defense Attache."[4] Id. at 4. Ms. Do's name appears in the Policy in two places: she is named as one of the four "Primary Driver[s]" of the 2003 Grand Marquis, id. at 5, and she is listed under the heading "Driver Information," which includes "drivers who frequently use

---

[3] The term "uninsured automobile" is defined as follows:

> an automobile with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury and property damage liability bond, or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury or property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder.

Defs.' Mem., Ex. A at 13.

[4] According to the plaintiff, the defense attaché for the Embassy at the time of the accident was Toan Nguyen. Pl.'s Opp'n at 4.

3

[their] own vehicles." Id. at 2. Ms. Le's name does not appear anywhere in the Policy. See id. at 1-16.

As noted earlier, the plaintiff commenced this lawsuit in the Superior Court seeking damages of one million dollars from Mr. Carr, Notice of Removal (Compl. ¶¶ 8-12),[5] and a declaratory judgment that the defendants owe him $100,000 pursuant to the uninsured motorist provision in the Policy. Id. (Compl. ¶¶ 13-19). The defendants subsequently removed the case to this Court, invoking 28 U.S.C. § 1364 (2006), a direct action statute granting federal district courts exclusive jurisdiction in any civil action, regardless of the amount in controversy, filed by any person against an insurer who by contract insures a member of a diplomatic mission. Notice of Removal ¶ 5; see 28 U.S.C. § 1364(a) ("The district courts shall have original and exclusive jurisdiction, without regard to the amount in controversy, of any civil action commenced by any person against an insurer who by contract has insured an individual, who is, or was at the time of the tortious act or omission, a member of a mission (within the meaning of section 2(3) of the Diplomatic Relations Act (22 U.S.C. 254a(3))) or a member of the family of such a member of a mission . . . .").[6] The defendants admit issuing the Policy to the Embassy, but deny that Ms. Do was a named insured and further deny that the insurance coverage extended to Ms. Le. See Notice of Removal (Answer of Defendants Insurance Company of the State of Pennsylvania and American International Group, Inc. ¶ 14). Both parties now seek summary judgment.

---

[5] On August 31, 2009, the parties agreed to voluntarily dismiss the case against Mr. Carr. Docket Entry Number 20 (Stipulation of Partial Dismissal).

[6] 22 U.S.C.§ 254a(3), the provision of the Diplomatic Relations Act referenced in 28 U.S.C. § 1364(a), explains that "the term 'mission' includes missions within the meaning of the Vienna Convention and any missions representing foreign governments, individually or collectively, which are extended the same privileges and immunities, pursuant to law, as are enjoyed by missions under the Vienna Convention." See 22 U.S.C. § 254a(3). In turn, Article 1 of the Vienna Convention defines "members of a mission" as "the head of the mission and the members of the staff of the mission." Vienna Convention on Diplomatic Relations and Optional Protocol on Disputes art. 1, Apr. 18, 1961, 23 U.S.T. 3227, 1972 WL 122692.

## II. STANDARD OF REVIEW

Courts will grant a motion for summary judgment under Federal Rule of Civil Procedure 56(c) if "the pleadings, depositions, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, courts must view the evidence in the light most favorable to the nonmoving party. Bayer v. U.S. Dep't of Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992). The nonmoving party, however, cannot rely on "mere allegations or denials . . . , but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation and internal quotation marks omitted). Under Rule 56, "if a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," summary judgment is warranted. Hazward v. Runyon, 14 F. Supp. 2d 120, 122 (D.D.C. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of establishing the absence of evidence that supports the non-moving party's case. Id. In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000) (citations omitted). Finally, "when ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely in dispute." Teva Pharm. Indus. Ltd. v. Food & Drug Admin., 355 F. Supp. 2d 111, 116 (D.D.C. 2004) (quoting Barr Labs., Inc. v. Thompson, 238 F. Supp. 2d, 236, 244 (D.D.C. 2002).

## III. LEGAL ANALYSIS

The central issue for the Court is whether Ms. Le qualifies as an <u>insured</u> under the Policy. The plaintiff argues that because the Policy lists Ms. Do as a driver in two places, and because a column adjacent to one of those listings "has a category for 'Additional Insured [and] Loss Payee,'" Ms. Do therefore qualifies as a named insured. Pl.'s Mem. at 5; <u>see also</u> Defs.' Mem., Ex. A at 5. The plaintiff then claims that because the Policy defines the term "insured" in part as "the insured and resident relatives," Ms. Do's status as an insured therefore extends to her mother, Ms. Le. Pl.'s Mem. at 5-6. According to the plaintiff, interpreting the Policy in this fashion would be "consistent with the reasonable expectations of the Defense Attaché, the purchaser of the . . . [P]olicy," <u>id.</u> at 7, and fulfill "the important [public] policy function of protecting innocent victims . . . against uninsured motorists." <u>Id.</u> at 8.

For their part, the defendants emphasize that "the <u>only</u> named 'insured'" under the unambiguous language of the Policy is the Embassy. Defs.' Mem. at 2 (emphasis in original). More specifically, the defendants assert that Ms. Do is not an "insured," that Ms. Le was not a resident of the "insured's" household, and that neither of the two cars covered by the Policy had any involvement in the underlying automobile accident.[7] <u>Id.</u> Thus, the defendants maintain that Ms. Le "has <u>no contact</u>" to the Policy and therefore they do not owe benefits to the plaintiff. <u>Id.</u> (emphasis in original). Upon reviewing the Policy and the applicable legal authority, the Court finds the defendants' position more convincing.

---

[7] The defendants even claim that if Ms. Do was the pedestrian struck by Mr. Carr, the uninsured motorist coverage would still not extend to her because she is not an insured and was not operating either of the insured vehicles at the time of the accident. Defs.' Mem. at 6 n.1.

Under District of Columbia law,[8] an "insurance policy is a contract between the insured and the insurer, and in construing it [the court] must first look to the language of the contract." Travelers Indem. Co. of Ill. v. United Food & Commercial Workers Int'l Union, 770 A.2d 978, 986 (D.C. 2001) (internal quotation marks omitted) (quoting Cameron v. USAA Prop. & Cas. Ins. Co., 733 A.2d 965, 968 (D.C. 1999)). "[U]nless it is obvious that words which appear in an insurance contract are intended to be used in a technical connotation, they will be given the meaning which common speech imports." Chase v. State Farm Fire & Cas. Co., 780 A.2d 1123, 1127 (D.C. 2001) (internal quotation marks omitted) (quoting Pa. Indem. Fire Corp. v. Aldridge, 117 F.2d 774, 775 (D.C. Cir. 1941)).

Whether a contract is ambiguous is a question of law to be determined by the Court. Dist. No. 1-Pac. Coast Dist. v. Travelers Cas. & Sur. Co., 782 A.2d 269, 274 (D.C. 2001) (citation omitted). "A contract is not ambiguous merely because the parties dispute its meaning" or could have drafted clearer terms. Id. (citations omitted); see Byrd v. Allstate Ins. Co., 622 A.2d 691, 693-94 (D.C. 1993) ("We need not deem a contract ambiguous merely because the parties do not agree on the interpretation of the contract provision in question."). Similarly, a contract "is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." Wash. Props., Inc., v. Chin, Inc., 760 A.2d 546, 548 (D.C. 2000) (internal quotation marks omitted) (quoting Holland v. Hannan, 456 A.2d 807, 815 (D.C. 1983)).

---

[8] District of Columbia law applies in this case because the Policy does not contain a choice of law provision, see Defs.' Mem., Ex. A at 1-16, and neither party discusses choice of law in their briefs and both rely only on District of Columbia cases for the applicable legal standards governing contract interpretation. See generally Pl.'s Mem.; Pl.'s Opp'n; Pl.'s Reply; Defs.' Mem.; Defs.' Opp'n. Both parties therefore assume that District of Columbia law applies, and "[t]he Court need not and does not question [their] assumptions on that point." Davis v. Grant Park Nursing Home LP, 639 F. Supp. 2d 60, 65 (D.D.C. 2009); see also CSX Transp., Inc. v. Commercial Union Ins. Co., 82 F.3d 478, 482-83 (D.C. Cir. 1996) (indicating that parties may waive choice of law arguments); In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("Unlike jurisdictional issues, courts need not address choice of law questions sua sponte.").

On the other hand, a "contract is ambiguous when it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations or of two or more different meanings." Holland, 456 A.2d at 815 (internal quotation marks omitted) (quoting Burbridge v. Howard Univ., 305 A.2d 245, 247 (D.C. 1973)). "If there is more than one interpretation that a reasonable person could ascribe to the contract, while viewing the contract in context of the circumstances surrounding its making, the contract is ambiguous." Gryce v. Lavine, 675 A.2d 67, 69 (D.C. 1996) (citation omitted). With respect to ambiguous insurance policies, "if its language is reasonably open to two constructions, the one most favorable to the insured will be adopted[, and a]ny fair doubt as to the meaning of its own words should be resolved against the insurer." Chase, 780 A.2d at 1127 (internal quotation marks omitted) (quoting Aldridge, 117 F.2d at 775); see also Smalls v. State Farm Mut. Auto Ins. Co, 678 A.2d 32, 35 (D.C. 1996) ("[C]ourts generally interpret any ambiguous provisions [in an insurance contract] in a manner consistent with the reasonable expectations of the purchaser of the policy.") (citations omitted). With these principles in mind, the Court turns to the facts in this case.

As noted earlier, in the section of the Policy that defines the term "[i]nsured," the Policy provides that the "unqualified word 'insured' includes the named insured and resident relatives legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply." Defs.' Mem., Ex. A at 7. As an initial point, the Court observes that by its plain terms, the scope of insurance coverage encompassed under the definition of the term "insured" applies only to the defendants' obligation to "indemnify the insured for all sums which he [or she] shall become legally obligated to pay as damages because

8

of bodily injury . . . [or] injury to or destruction of property . . . ." Id. Therefore, because the accident was caused by Mr. Carr and not the "insured" or any of the authorized drivers listed in the Policy, the definition of insured is simply not applicable under the facts in this case. See Pl.'s Mem. at 1-2. As a result, it follows that the Policy does not apply either, and for that reason the plaintiff's claim must fail. See Travelers Idem. Co. of Ill., 770 A.2d at 986 ("[W]hen . . . contracts are clear and unambiguous, they will be enforced by the courts as written . . . ." (quoting Smalls, 678 A.2d at 35)).

And even if the Court accepted the plaintiff's contention that the Policy applies in this case, Pl.'s Mem. at 5-6, the outcome would still be the same. As discussed earlier, the "Certificate of Liability Insurance" specifically designates the "Embassy of Vietnam Defense Office" as the "insured," Defs.' Mem., Ex. A at 1, and similarly, on the renewal declaration page of the Policy, the "Vietnam Defense Attache" is identified as the "Named Insured[.]" Id. at 4. In contrast, both references to Ms. Do identify her only as either a frequent or one of the primary drivers of the two vehicles covered by the Policy, and neither reference to her uses the word "insured." See Defs.' Mem., Ex. A at 2, 5. Consequently, while Ms. Do would be insured while operating one of the two covered vehicles, it does not make her the named "insured" under the Policy. See, e.g., Lester v. Nationwide Mut. Ins. Co., 586 F. Supp. 2d 559, 572 (D.S.C. 2008) ("To the extent [p]laintiff argues he is entitled to [uninsured motorist] benefits simply because he was listed on the Policy as an 'insured driver,' the court disagrees."). The fact Ms. Do's name appears in a column adjacent to another column where the word "insured" appears, Defs.' Mem., Ex. A at 5, does not change this result.

Accepting the plaintiff's interpretation would lead to some peculiar consequences. For example, under the plaintiff's theory, benefits would be payable under the Policy to any relative

residing with a driver listed on the Policy who happened to be involved in an accident with an uninsured motorist, whether or not any of the cars covered by the Policy were involved. As the defendants correctly point out, Defs.' Mem. at 6, according to the plaintiff's logic, if Ms. Do had a daughter residing with her and she was hit by an uninsured motorist while crossing the street on a school trip to Utah, the child would be entitled to recover under the Policy. And remarkably, the plaintiff opines that such a result would be legally appropriate, stating that coverage of the daughter in that situation "would be nothing more than would be included in a standard personal automobile policy." Pl.'s Opp'n at 6-7.

But the plaintiff is mistaken, the major flaw with her supposition being that it conveniently omits key language from the Policy's definition of "insured." Specifically, the definition of insured refers to the "<u>actual use of the automobile</u> . . . by the named insured or with his [or her] permission." Defs.' Mem., Ex. A at 7 (emphasis added). The definition of "insured" is therefore linked to the "actual use" of one of the two automobiles covered by the Policy, and the plaintiff's reasoning overlooks the critical fact that neither vehicle had any involvement in the accident in this case. <u>See</u> Pl.'s Mem. at 1-2. Indeed, by the plaintiff's own admission, the only vehicle involved here was driven by Mr. Carr. <u>Id.</u> at 1; Notice of Removal (Compl. ¶ 7). Accordingly, the Court can not draw a connection between the accident and the scope of the coverage provided by the Policy, and may not rewrite the Policy in order to create one. <u>See Chase</u> 780 A.2d at 1127 ("[The Court] may not 'indulge in forced constructions to create an obligation against the insurer.'" (quoting <u>Cameron</u>, 733 A.2d at 968)); <u>see also</u> <u>Unfoldment, Inc. v. D.C. Contract Appeals Bd.</u>, 909 A.2d 204, 209 (D.C. 2006) ("A court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract . . . and will not torture words to import ambiguity where the ordinary meaning leaves no room

for ambiguity.") (citations and internal quotation marks omitted); 1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc., 485 A.2d 199, 205 (D.C. 1984) ("The writing must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all of its terms.") (emphasis added) (citations omitted). Accordingly, the Court finds that Ms. Do is not an "insured" under the Policy, and therefore, it follows that her mother, Ms. Le, is not an "insured" either.

Although there does not appear to be a District of Columbia case directly on point, the defendants point to a Maryland case, Schuler v. Erie Ins. Exch., 568 A.2d 873 (Md. Ct. Spec. App.), cert. denied, 572 A.2d 183 (Md. 1990), which they contend is factually analogous to the one here.[9] See Defs.' Mem. at 6-7. In that case, the plaintiff was standing next to his car, a 1983 Camaro, when he was struck and injured by an automobile driven by an uninsured motorist. Schuler, 568 A.2d at 874. At the time of the accident, the plaintiff's wife had automobile insurance providing for uninsured motorist coverage through a policy issued by her employer, Rainbow Hair Designers. Id. Rainbow Hair Designers was the named insured under the wife's policy, id., and that policy covered five cars, including her 1980 BMW, an automobile which had no involvement in the accident with the plaintiff. Id. at 874, 875 n.2. After the accident, the plaintiff sought benefits under his wife's policy, because her policy had a higher limit for uninsured motorist coverage than his policy. Id. at 875.

In reviewing the language of the policy, the Maryland Court of Special Appeals found that the plaintiff was not entitled to recover damages under his wife's policy because he was "not covered as either the subscriber or as the named insured." Id. at 877. The court noted that "if [the employer] had intended to include the owners of the five cars as named insureds it could have done so simply by including the named individuals under the named insured portion of the

---

[9] The plaintiff argues Schuler is inapplicable because the language of the policy in that case is different and also because it deals with a commercial automobile policy rather than a diplomatic automobile policy. Pl.'s Reply at 1.

11

declaration sheet in the policy." Id. at 878. In addition, the court observed that even if the wife had "been struck while standing beside the [plaintiff's] Camaro . . . the [insurance] policy" would still not provide coverage for her. Id. at 877.

To the extent Schuler is deserving of "special attention," Dennis v. Walker, 284 F. Supp. 413, 416 (D.D.C. 1968), the Court generally agrees with its conclusion. See Walker v. Independence Fed. Sav. & Loan Ass'n, 555 A.2d 1019, 1022 (D.C. 1989) ("In the absence of appellate or other authority in [the District of Columbia], the Court may be guided by Maryland common law."); Napoleon v. Heard, 455 A.2d 901, 903 (D.C. 1983) (indicating that Maryland is "the source of the District's common law and an especially persuasive authority when the District's common law is silent"). Indeed, in this case, if the Embassy intended to make the drivers of the covered vehicles the "insureds," it could have done so by designating them as such on the Policy, and that was not done.

In any event, there is legal authority from other jurisdictions supporting the Court's determination concerning Ms. Do, namely that "one listed in the policy, but only in the status of a driver of the vehicle, is not a named insured despite the fact that such person's name was physically in the policy." 7A Lee R. Russ & Tomas F. Segalla, Couch on Insurance § 110:1 (3d ed. 2005); see Lester, 586 F. Supp. 2d at 572; Kitmirides v. Middlesex Mut. Assurance Co., 783 A.2d 1079, 1084 (Conn. App. Ct. 2001) ("[W]e conclude that a person who is a listed driver on the declarations page of an automobile insurance policy, and who is nowhere else listed as an insured, is not entitled to underinsured motorist coverage."); Ga. Farm Bureau Mut. Ins. Co. v. Wilkerson, 549 S.E.2d 740, 742 (Ga. Ct. App. 2001) ("Although [son of named insured] may be [covered under policy] because he is an authorized driver of the insured vehicle, he is not the named insured."); Little v. Progressive Ins., 783 N.E.2d 307, 311 (Ind. Ct. App. 2003) ("'Named

insured' is . . . not synonymous with 'driver.'"); Eldridge v. Columbia Mut. Ins. Co., 270 S.W.3d 423, 427 (Mo. App. W.D. 2008) (citing cases showing car insurance policies are not ambiguous if they do not define the term "driver")); Hodges v. Pa. Nat. Ins. Co., 615 A.2d 1259, 1261 n.3 (N.J. Super. Ct. App. Div. 1992) ("[A]lthough [the] plaintiff is insured under her mother's policy, as would be any driver operating the car with the mother's permission, only the mother is the titled 'insured' on the policy."); Nationwide Mut. Ins. Co. v. Williams, 472 S.E.2d 220, 222 (N.C. App. 1996) ("[W]e reject the . . . contention that the term 'driver' is synonymous with 'named insured.'").

## IV. CONCLUSION

For the reasons set forth above, the Court finds that the disputed terms of the insurance Policy at issue in this case are unambiguous and that Ms. Le does not qualify for uninsured motorist benefits under the Policy that is the subject of this litigation. Accordingly, summary judgment is awarded to the defendants.

**SO ORDERED** this 21st day of April, 2010.[10]

/s/
REGGIE B. WALTON
United States District Court Judge

---

[10] This Memorandum Opinion accompanies the Order that was issued on March 31, 2010, and the Final Order issued on April 21, 2010.